IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 4:03-cr-00039-RH-AK

FELIPE ARELLANO,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Doc. 47, Motion to Vacate under 28 U.S.C. § 2255, by Felipe Arellano. The Government has filed its response, Doc. 53, and the time for filing a reply has passed without further argument from Defendant. This cause is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that the motion to vacate be denied.

**BACKGROUND**

Defendant and his brother, Armando Arellano-Alanis,[1] were indicted for conspiracy to distribute and to possess with intent to distribute more than 50 kilograms of marijuana and for possession with intent to distribute more than 50 kilograms of marijuana.[2] Doc. 1. On October

---

[1] Armando has not been arrested and remains a fugitive.

[2] By separate indictment, three others–Richardo Martinez Rangel, II, Aurelio Vargas, and Cristobal Verdizez--were charged for their participation in the acts underlying the instant Indictment. *See United States v. Rangel*, Case No. 4:03cr5-SPM (N.D. Fla.). All three pled guilty and were sentenced to terms of imprisonment ranging from 33 to 42 months. *Rangel* at

*Page 2 of 10*

30, 2003, Defendant appeared for a change of plea and entered a plea of guilty to the charges in the Indictment. Docs. 19-21.

In the Presentence Report (PSR), the probation officer, in pertinent part, found (1) that Defendant should not be assessed for his role in the offense, (2) that he should not receive credit for acceptance of responsibility, and (3) that the amount of marijuana at issue was 713.4 kilograms. The Government objected to the lack of a role adjustment and advised the officer that it intended

> to prove at the sentencing hearing that the defendant planned the transportation of the marijuana, selected and authorized the involvement of the other participants, obtained the marijuana with the assistance of his brother...arranged for a buyer of the marijuana, selected the meeting places for the participants to gather, exercised decision making authority and was to compensate the other participants in the offense for their role at the completion of the delivery of the marijuana. Additionally...the criminal activity in which this defendant was involved was otherwise extensive based on several other trips that occurred on a monthly basis between 1998 and 2003 in which the defendant and others transported marijuana from Texas to Florida and that each of these trips was organized and directed by the defendant.

PSR at ¶ 90. Defendant objected to the amount of marijuana used to determine the base offense level "beyond the marijuana that was seized by authorities...." *Id*. at ¶ 94. Defendant also argued that the amount should "not include the weight of the packaging materials." *Id*. Finally, Defendant objected to the failure to credit him with acceptance of responsibility, arguing that based on his guilty pleas and his "willingness to inform the Court at the sentencing hearing of his acceptance of responsibility, a three-level reduction in his offense level is warranted." *Id*. at ¶ 97.

---

Docs. 83, 92, 100, 131, 143, & 150.

*Case No: 4:03-cr-00039-RH-AK*

When the parties appeared for sentenced, they initially conferred "to narrow the issues." Doc. 38 at 3.  As a result, counsel for Defendant, Charles Banker, advised the Court that the parties had agreed to a base offense level of 28, reflecting "relevant conduct, over 400 up to 700 grams" of marijuana.  *Id*.  The Government agreed, "That would be the evidence that the government would present.  It would be a conservative estimate, but yet reasonable."  *Id*. at 4.  Mr. Banker then advised the Court, "We're not going to be contesting the role adjustment, and the government is in agreement that we get acceptance."  *Id*.  With "a four-level increase based on role; three-level reduction based on acceptance," Defendant's base offense level was 29.  *Id*.  The only other issue remaining was whether Defendant's conviction for petty theft was valid.  After hearing argument and reviewing the record of the conviction, the Court found that the conviction was valid, which produced a total offense level of 29 and a criminal history category of III for a Guidelines range of 108 to 135 months.  *Id*. at 10-11.  The Court sentenced Defendant to the low end of the range, 108 months.  *Id*. at 14-17; Doc. 30.

Defendant subsequently appealed, arguing that the Court "violated his Sixth Amendment right to have a jury determine beyond a reasonable doubt (1) the quantity of marijuana involved, (2) his role in the offense, and (3) allegations of spousal abuse and battery, none of which were charged in the indictment, as required by *Booker*...."  *United States v. Arellano*, 144 Fed. Appx. 42, 43 (11th Cir. 2005).  He also claimed that the Court erred "by adding one point to his criminal history score...based on a prior conviction in Florida state court for petit theft, to which he pled no contest *in absentia* and was fined $500."  *Id*. at 43 n.1.  The court found his "argument on this point...unpersuasive."  *Id*.

As to his *Booker* claims, which were reviewed for plain error, the court concluded:

> At sentencing, Arellano abandoned his challenges to the drug quantity by agreeing to a base offense level of 28, based on an amount of marijuana between 400 and 700 kilograms. He also abandoned his challenge to the role enhancement when he stated that he was not going to contest it, in return for the government's recommendation of a sentence reduction for acceptance of responsibility. Thus, he admitted these facts and cannot satisfy the first prong of plain error, for purposes of establishing *Booker* constitutional error. Moreover, Arellano's claim that the district court violated his Sixth Amendment rights by enhancing his sentence based on his past alleged spousal abuse is without merit, since the district court expressly stated that it was not considering the alleged abuse. The district court's stated intention is reflected in the court's sentencing Arellano to 108 months, the lowest possible sentence, Accordingly, Arellano's sentence was not enhanced based on facts that he did not admit, and there was no Sixth Amendment violation.

*Id*. at 44 (citation omitted). The court also rejected any argument that the Court had committed statutory error in sentencing Defendant:

> The district court did not commit reversible plain error by sentencing Arellano under a mandatory guideline system. The record reveals no inclination on the part of the district court that Arellano's sentence was too high, or that the court felt constrained by the mandatory nature of the guidelines.

*Id*. The Eleventh Circuit concluded:

> In sum, because the calculation of Arellano's sentence was based on only facts admitted by him, and he has failed to show that there is a reasonable probability that the district court's error in sentencing him under a mandatory sentencing system affected the outcome of his sentence, he has not shown plain error based on *Booker*.

*Id*. at 45.

Defendant's petition for a writ of certiorari was denied. *Arellano v. United States*, 546 U.S. 1205 (2006). The instant motion to vacate followed. On this occasion, Defendant raises three claims of ineffective assistance of counsel, each of which will be considered in turn.

## DISCUSSION

Because all of Defendant's claims raise the issue of counsel's effectiveness, a review of

*Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would

interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16. "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*. Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*. Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather

whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

      1.      Failure to argue that sentence was illegally enhanced for drug quantity.

More precisely, Defendant states that he received ineffective assistance of counsel "when counsel failed to argue when the Movant's Sixth Amendment Right was violated when his sentence was illegally Enhanced by the drug amount of less than 80 kilograms, as originally charged in the Grand Jury Indictment as opposed to the government's argument for at least 400 but less than 700 kilograms." Doc. 47 at 5.

In response, the Government has submitted the affidavit of the prosecuting attorney, Christopher Canova, who states that before the sentencing hearing, he communicated with Mr. Banker and advised him that the Government intended to submit evidence at the sentencing hearing to establish that Defendant was responsible for greater than 700kg of marijuana and that Defendant was an organizer and leader in the drug trafficking. Doc. 53, Attach. 1. On the day of the hearing, Mr. Canova was prepared to present testimony from two cooperating defendants who "were ready to explain their historical relationship with the Defendant , as well as the Defendant's role in the offense" and from a law enforcement officer who was "prepared to testify as to some facts that would corroborate the testimony of one of the cooperating defendants." *Id*. According to Mr. Canova's objections to the PSR, which were copied to Mr. Banker, he was prepared to present evidence that "the criminal activity in which Felipe Arellano was involved was...extensive." More specifically,

> On an average of every other month between 1998 and his arrest, Felipe Arellano organized and directed the transportation of marijuana from Texas to Florida. He direct multiple "mules" on these trips that either he solicited or were solicited on

> his behalf, with his approval. As in the offense at bar, Felipe Arellano (with the assistance of his brother) procured the marijuana for these trips and arranged for a buyer in Florida. He directed the vacuum packing of the marijuana and the concealment of the marijuana, which on many occasions was hidden in the fuel tank. He arranged for the payment of the marijuana by the buyer and compensated the participants for their roles in the activity.

*Id*. In Mr. Canova's estimation, if he prevailed on establishing a history of drug trafficking, Defendant's leadership role, and the increased drug amounts under relevant conduct, then Defendant faced a Guidelines range of 188 to 235 months imprisonment, not the 121 to 151 months determined by the probation officer. *Id*.; *see also* PSR at ¶ 76.

This evidence clearly shows that Defendant's attorney was fully apprised before sentencing that the Government intended to seek a substantially enhanced sentence and that it had evidence to support the enhancement request. The question is thus whether counsel acted deficiently in negotiating a drug quantity beyond what was actually recovered at the time of Defendant's arrest but less than (1) what the Government was prepared to prove as relevant conduct under a preponderance of the evidence standard and (2) what the probation officer found in his presentence investigation, in exchange for credit for acceptance of responsibility.

Having carefully considered the matter, the Court finds that counsel did not act deficiently in this regard. Even after *Booker* (which was not the law at the time of Defendant's sentencing), the Court may continue to determine drug quantity and other extra-verdict enhancements by a preponderance of the evidence. *United States v. Rodriguez* 398 F.3d 1291, 1297 (11th Cir. 2005). Based on the uncontradicted evidence presented here, the Government would easily have met its burden of showing not only drug quantities over 700 kilograms but also Defendant's supervisory or leadership role in the conspiracy. Faced with that probability

and the real possibility that if he contested the amount of drugs and Defendant's role, he might lose any chance to get credit for acceptance of responsibility, counsel's choice among the alternatives was reasonable and resulted in a Guidelines range substantially less than what Defendant realistically faced. Thus, Mr. Banker's decision was not deficient, and Defendant was certainly not prejudiced by it, as there is not even a reasonable probability that the outcome of the sentencing would have been more advantageous to Defendant than that negotiated by counsel.

2. Failure to argue against role enhancement.

In this claim, Defendant charges that he received ineffective assistance "when counsel failed to argue the applicability of the 4-level enhancement for leadership role that was never charged or part of the plea agreement." Doc. 47 at 5. Having carefully considered the matter, the Court disposes of this claim in the same manner and for the same reasons as explained in the previous section.

3. Failure to argue against uncharged, unrelated criminal conduct.

Finally, Defendant maintains that he received ineffective assistance "when counsel failed to argue Uncharged Criminal Allegations of prior unrelated criminal conduct from 1998 that the Movant was never charged or convicted, to elevate[ ] the sentence." This appears to be a restatement of the first claim and is flatly without merit. Under the Sentencing Guidelines, the Court can always consider relevant conduct, whether it be conduct for which a defendant has never been charged or, indeed, for which he has in fact been acquitted. *See United States v. Duncan*, 400 F.3d 1297, 1304-05 (11th Cir. 2005). Counsel's decision to negotiate a lower Guidelines range than Defendant otherwise most certainly faced was neither deficient nor

prejudicial.

## CONCLUSION

Having carefully considered the matter, the Court finds that counsel's decisions in this case did not violate *Strickland*, and thus, Defendant did not receive ineffective assistance of counsel. In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's motion to vacate, Doc. 47, be **DENIED.**

**IN CHAMBERS** at Gainesville, Florida, this  *1ˢᵗ*  day of November, 2007.

*s/ A. KORNBLUM*
**ALLAN KORNBLUM
UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**